IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LATONDRA INGRAM, Individually, and )
on Behalf of All Other Similarly Situated, )
)
Plaintiffs, )
) No. 11 C 6566
vs. )
) Magistrate Judge Sidney I. Schenkier
WORLD SECURITY BUREAU, INC., )
and DENA HALLOWAY, )
)
Defendants. )

## MEMORANDUM OPINION AND ORDER

Plaintiff, Latondra Ingram, has brought this suit under the Fair Labor Standards Act ("FLSA"), alleging that defendants failed to compensate her and similarly situated persons for: (a) work performed before and after their shifts; (b) attending mandatory meetings; (c) maintaining their uniforms; and (d) for 30-minute meal breaks that they did not actually receive. On November 15, 2011, the district judge presiding in the case conditionally certified an opt-in class and, after notice, 198 persons in addition to Ms. Ingram joined the lawsuit. Thereafter, on December 21, 2012, the district judge decertified the class with respect to the pre- and post-shift work and uniform maintenance claims, but granted final certification on the claims of failure to pay plaintiffs for attending meetings and for meal breaks they did not take.

On January 30, 2013, the case was referred to this Court for a settlement conference (doc. # 119). The Court conducted settlement conferences with the parties on March 26 and April 19, 2013. At the end of the second session, the parties reached a settlement of plaintiffs' liability and damages claims, with the issue of attorneys' fees and costs to be reserved for later decision by the Court. The Court approved the settlement on June 19, 2013 (doc. # 137).

Thereafter, plaintiffs filed their petition for reasonable attorneys' fees and costs. (doc. # 142), which is the subject of this Memorandum Opinion and Order. In their petition, plaintiffs seek an award of attorneys' fees and costs totaling $100,832.50 and $5,999.99 in costs. In addition, plaintiffs seek $9,798.75 in attorneys' fees they incurred in preparing their reply memorandum (doc. # 149: Pls.' Reply Mem. at 15). Defendants object to the reasonableness of the requested fees and costs, and propose that plaintiffs be awarded no more than $50,748.91 (doc. # 146: Defs.' Resp. at 15 and Ex. 20). For the reasons set forth below, the Court awards plaintiffs $82,703.07 consisting of $77,142.75 in attorneys' fees and $5,560.32 in costs.[1]

## I.

The parties agree that in deciding what constitutes a reasonable amount of attorneys' fees to award, our starting point is the "lodestar method," which "forms the 'centerpiece' of attorneys' fee determinations. . . ." *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 639 (7th Cir. 2011) (internal quotations omitted). The lodestar calculation requires a court to multiply (1) the number of hours reasonably expended by plaintiffs' attorneys (2) by their reasonable hourly rates. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1310 (7th Cir. 1996). A court may then adjust the lodestar calculation based on a variety of factors, including the degree of success a plaintiff has obtained, *see, e.g., Spegon v. Catholic Bishop of Chi.*, 175 F.3d 544, 550 (7th Cir. 1999), and the relationship between the lodestar amount and the damages awarded. *See, e.g., Moriarty v. Svec*, 233 F.3d 955, 967-68 (7th Cir. 2000). A trial court's determination of a reasonable fee award to the prevailing party is reviewed under the "highly deferential abuse of discretion standard." *Pickett*, 664 F.3d at 639.

---

[1] On April 22, 2013, the case was reassigned to this Court pursuant to the consent of the parties and 28 U.S.C. § 636(c) and Local Rule 73.1 (doc. ## 129, 131).

2

Defendants attack both parts of plaintiffs' lodestar calculation. They challenge the hourly rates sought by the four attorneys and the legal assistants who scheduled time on the matter, and they challenge the amount of time devoted to the case. In addition, defendants argue that plaintiffs' "limited success" warrants a 40 percent reduction in the lodestar amount. We address each of these arguments in turn.

### A.

Plaintiffs seek an hourly rate of $500.00 for two of their attorneys (Messrs. Zouras and Stephan, who are partners); $275.00 and $250.00, respectively, for Messrs. Ficzko and Goldstein, who are associates; and $125.00 for the legal assistants who worked on the matter. Defendants argue that those rates are too high. They argue that the rates should be reduced to $325.00 an hour for Messrs. Zouras and Stephan, $250.00 an hour for Mr. Ficzko, $225.00 an hour for Mr. Goldstein, and $90.00 an hour for the legal assistants.

The Seventh Circuit has defined a reasonable hourly rate as one that is "derived from the market rate for the services rendered." *Pickett*, 664 F.3d at 640 (quoting *Denius v. Dunlap*, 330 F.3d 919, 930 (7th Cir. 2003)). The rate that an attorney actually charges – and receives – from paying clients for similar litigation is "presumptively appropriate" to use as the hourly rate for the lodestar analysis. *People Who Care*, 90 F.3d at 1310 (quoting *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1150 (7th Cir. 1993)). In this case, plaintiffs' attorneys do not claim that they charge and receive the rates they seek here from paying clients in FLSA cases. Rather, since plaintiffs' counsel maintain a contingency fee practice, they must offer "the next best evidence" of their market rate: that is, "evidence of rates similarly experienced attorneys in the community charge paying clients for similar work and evidence of fees awards the attorney has received in similar cases." *Pickett*, 664 F.3d at 640 (quoting *Spegon*, 175 F.3d at 555); *People Who Care*, 90 F.3d at

1310 (characterizing the next best evidence as "the rate charged by lawyers in the community of 'reasonably comparable skill, experience and reputation'" (quoting *Blum v. Stenson*, 465 U.S. 886, 892, 895 n.11 (1984)). "[A]n attorney's self-serving affidavit alone cannot establish the market rate for that attorney's services." *Harper v. City of Chi. Heights*, 223 F.3d 593, 604 (7th Cir. 2000).

In this case, plaintiffs' evidence does not support the rates that they seek. Plaintiffs do not offer evidence that any courts have awarded them attorneys' fees at the rates that they seek in this case. To the contrary, the only evidence plaintiffs' attorneys submit to show an approved rate is an arbitral decision from March 2013, in which Mr. Zouras was awarded a rate of $425.00 an hour; Mr. Stephan, a rate of $375.00 an hour; and Mr. Ficzko, a rate $250.00 an hour (Pls.' Reply Mem. at 4 and Ex. 2 at 3-4). Plaintiffs argue that we should award higher rates here, because the rates awarded in that arbitral decision were based on "reasonable hourly rates for plaintiff counsel in rural New Jersey" (Pls.' Reply Mem. at 4). However, we do not read the arbitral decision that way. The decision states that the arbitrator considered "the rates within *New Jersey* of comparable attorneys" (*Id.*, Ex. 2 at 3) (emphasis added). The decision offers no basis to conclude that the arbitrator focused on rural as opposed to urban areas within the state.

Plaintiffs also argue that the declaration they have offered from Jac Cotiguala, a very experienced and capable attorney who practices FLSA law, supports their request for a higher rate (Pls.' Mem. at 7; Pls.' Reply Mem. at 3-4). Again, we must disagree; the opinion offered in that declaration is too conclusory to support rates that are higher than those plaintiffs' counsel have actually received in the very recent arbitral award. Mr. Cotiguala's declaration acknowledges that rates charged by firms who perform labor work vary widely, ranging from $150.00 per hour to $900.00 per hour (Pls.' Mem., Ex. 5, ¶ 14). While Mr. Cotiguala attests to

his familiarity with plaintiffs' attorneys and his belief that they are "highly knowledgeable and experienced in federal wage and hour laws" (*Id.* ¶ 15), he does not explain the basis for his opinion that the rates they seek in this case are reasonable. Moreover, we have been given no good reason why Messrs. Zouras and Stephan should receive a rate of $500.00 per hour, which is more than the $450.00 an hour that Mr. Cotiguala – who has many more years of experience in the field than do they – was recently awarded. *La Riva v. Houlihan Smith & Company, Inc.*, No. 10 C 8206, Mem. Op. and Order at 8-9 (N.D. Ill. Sept. 24, 2013) (Defs.' Resp., Ex. 9).[2]

Finally, we find unpersuasive orders that plaintiffs cite in which attorneys in wage and hour cases have been awarded hourly rates ranging from $450.00 to $500.00 (Pls.' Mem. at 8 and Ex. 7). In all of those cases, the attorney who received that award was Douglas Werman, and plaintiffs offer no evidence to show why the rates of Messrs. Zouras and Stephan should be commensurate with the awards to Mr. Werman based on their relative skill and experience.

For those reasons, we conclude that a reasonable hourly rate for plaintiffs' attorneys is $425.00 for Mr. Zouras; $250.00 an hour for Mr. Ficzko, and $225.00 an hour for Mr. Goldstein.[3]

We also conclude that the rate that plaintiff seeks for the work of legal assistants should be reduced. In their supporting memorandum, plaintiffs offered nothing to support the hourly

---

[2]We find unconvincing plaintiffs' argument that Messrs. Zouras and Stephan are entitled to a higher rate in this case than Mr. Cotiguala received in *La Riva* because *La Riva* was not litigated as a class case, and in *La Riva* a recovery was obtained only on behalf of two individuals (Pls.' Reply Mem. at 3). In our judgment, the complexity of the claims at issue go more to the appropriate amount of time to spend on the case than the hourly rate, particularly when considering the Seventh Circuit case law describing FLSA cases as "less complex than Title VII and other employment-related civil rights litigation." *Small v. Richard Wolf Med. Instruments Corp.*, 264 F.3d 702, 707-08 (7th Cir. 2001).

[3]Plaintiffs have provided scant evidence concerning Mr. Goldstein's background. The only information provided is in Mr. Cotiguala's declaration, in which he notes that Mr. Goldstein was licensed to practice law in Illinois in 2011 (Pls.' Mem., Ex. 5, ¶ 17). We award him a lower rate than Mr. Ficzko, who was first licensed to practice in Illinois two years earlier, in 2009 (*Id.*, Ex. 4, ¶ 2). In addition, because we have decided not to award any fees for the work done by Mr. Stephan, we deem it unnecessary to determine the appropriate hourly rate for his services.

rate of $125.00 for legal assistants other than the unelaborated statement by Mr. Cotiguala that this figure "is a reasonable current market rate in Chicago" for the work of legal assistants (Pls.' Mem., Ex. 5, ¶ 21). In their reply memorandum, plaintiffs for the first time provide at least some minimal information about one of the legal assistants who worked on the matter: they say that "the majority" of the paralegal work done was performed by Christine Bass, who presently is a second-year student at Northwestern University School of Law (Pls.' Reply Mem., Ex. 1, ¶ 3; Ex. 3, ¶ 2). However, plaintiffs offer no evidence concerning Ms. Bass's pre-law school background, or the extent of her training and experience as a legal assistant. Nor do they identify precisely how much of the "majority" of legal assistant work performed in the case was work that she personally performed. Plaintiffs simply have not provided enough evidence to demonstrate what Ms. Bass's rate should be, much less what the rate should be for other unnamed persons who did legal assistant work. We therefore set no rate for the legal assistants, and will not award any compensation for their time.[4]

**B.**

We next consider the number of hours of work for which plaintiff seeks compensation. Plaintiffs seek compensation for a total of 231.8 hours of work through the filing of their fee petition, consisting of 137.1 hours for Mr. Zouras; 4.4 hours for Mr. Stephan; 61.7 hours for Mr. Ficzko; and 28.6 for Mr. Goldstein. Plaintiffs point out that this represents a reduction of 31.3 hours from the time actually worked on the matter.

Defendants argue that the compensable hours should be considerably lower. Defendants concede that their counsel billed 253.5 hours through the filing of the fee petition. However,

---

[4] We note that in the arbitration award that plaintiffs cite in their reply memorandum, the arbitrator declined to make any award compensating plaintiff for the services of a person identified in the opinion only as "Christine" (whom we suspect is Christine Bass) on the ground that she was merely an administrative or secretarial assistant (Pls.' Reply, Ex. 2, at 4).

6

defendants say that the attorney time paid to plaintiffs should be reduced to 158.3 hours, consisting of 89.1 hours for Mr. Zouras's work; no compensation for Mr. Stephan's small number of hours; 41.5 hours for Mr. Ficzko's work; and 27.7 hours for Mr. Goldstein's work. In seeking this reduction of the amount of time to be compensated, defendants challenge the amount of time devoted to: (1) court appearances and related meetings; (2) attendance at settlement conferences and related matters; (3) preparing demand letters and related matters; (4) work on the response to the motion to decertify; (5) work performed on "unrelated claims;" (6) clerical functions; (7) preparing responses to defendants' discovery requests; (8) preparing plaintiffs' discovery requests; (9) deposing opt-in plaintiffs and defendants' representatives; and (10) other "various functions" (Defs.' Resp. at 7-13).

As an initial matter, we note that defendants are on shaky footing in claiming that plaintiffs' counsel should be compensated for approximately 100 hours less time than should the defense counsel who defended the case. The purpose of the requirement in Local Rule 54.3 of requiring a party who opposes a fee request to present its own billing records is to avoid "hypocritical objections." *Farfaras v. Citizens Bank & Trust of Chi.*, 433 F.3d 558, 569 (7th Cir. 2006). Moreover, in most of their challenges, defendants do not say that the tasks that defense counsel performed were unnecessary, but rather, they criticize the amount of time that plaintiffs' counsel spent in performing them. Most of these objections are niggling ones, in which defendants propose a small reduction in the amount of time to be compensated without offering a basis for the amount of the reduction except for defendants' say so.[5] Where, as here, defendants fail to provide a principled basis to reduce time entries that allegedly are excessive, we will not

---

[5] For example, defendants seek a reduction of: .7 hours (out of 15.3 hours claimed) for court appearances and related meetings; 2.5 hours (out of 16 hours claimed) for attending settlement conferences and related matters; 3.1 hours (out of 9 hours claimed) for preparing demand letters; and 2.5 hours (out of 5.2 hours claimed) for preparing discovery requests.

7

"engage in an arbitrary determination of how long a 'reasonable' attorney would spend" on certain tasks. *O'Sullivan v. City of Chi.*, 484 F. Supp. 2d 829, 837 (N.D. Ill. 2007).

Other proposed reductions that defendants seek are more substantial, such as a reduction of 14.8 hours in paralegal time for responding to defendants' discovery requests; and a reduction of about 14 hours of attorney time spent on other "various functions." We reject these requested reductions. While the legal principles involved in this FLSA action may not have been complex, the case involved nearly 200 opt-in plaintiffs (out of a group of more than 700 putative members who received notice), thereby presenting a significant administrative task. Efforts by plaintiffs' counsel to maintain contact with those opt-in clients, and to develop and maintain their confidence, was a necessary function that we suspect redounded to the benefit of all parties at the time of settlement. And, in considering defendants' suggestion that plaintiffs' counsel simply should have done this work in less time, we recognize, as the Seventh Circuit has taught, that "[l]awyers do not come from cookie cutters. Some are fast studies and others require extra preparation." *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1150 (7th Cir. 1993). Perhaps defense counsel believes that he could have done all of this work more quickly (although the amount of time that he spent on the case might suggest otherwise). But, in any event, the fact that he might have been able to perform this work in less time does not mean that the amount of time that plaintiffs' counsel spent on these tasks was unreasonable.

Several challenges that defendants raise are based on plaintiffs' lack of success on certain claims. Specifically, defendants say that there should be some reduction in time for plaintiffs' response to the motion to decertify, which resulted in the decertification of certain of the opt-in classes. Defendants also say that certain depositions were unnecessary, and that even where the deposition was appropriate, it could have been taken in a shorter period of time but for the

presence in the case of the claims that were ultimately dismissed. We are not persuaded by either of these challenges.

*First*, defendants do not point to any particular portions of the response to the motion to decertify that represent efforts to defend the claims that were decertified. And with good reason. In their response to the decertification motion, plaintiffs expressly stated that they "do not oppose Defendants' motion with respect to pre-shift, post-shift and uniform maintenance claims" (doc. # 112: Pls.' Opp. to Motion to Decertify at 1 n.1). Plaintiffs directed their opposition to decertification to the claims concerning mandatory meetings and meal breaks – and, they were successful in opposing decertification of those claims.

*Second*, we are not persuaded by defendants' claim that the Chomiak and Halloway depositions were wholly unnecessary. We are cautious about engaging in a 20-20 hindsight analysis of whether certain witnesses should have been deposed. Given the roles of Mr. Chomiak and Ms. Halloway as owners of the corporate defendant, we are not prepared to say that at the time the depositions were taken it was unreasonable for plaintiffs to do so.

*Third*, defendants do not identify portions of the depositions that were devoted to the unsuccessful claims. Nor do they suggest that these individuals would not have been deposed at all but for the unsuccessful claims. Rather, defendants "contend that the total time should not be more than 2/3 of the time entry" after eliminating the unsuccessful claims. (Defs.' Resp. at 12). This kind of "mechanical claim-chopping approach" was rejected by the Seventh Circuit more than two decades ago. *Lanard v. Argento*, 808 F.2d 1242, 1245 (7th Cir. 1987). While a prevailing plaintiff is not entitled to fees for time expended pursuing unsuccessful claims that are unrelated to those on which the plaintiff prevailed, the reality is that it is often difficult, if not impossible, "to divide the hours expended on a claim-by-claim basis." *Jaffee v. Redmond*, 142

F.3d 409, 413 (7th Cir. 1998) (quoting *Hensley*, 461 U.S. at 435). That is true here. We therefore reject this challenge to the amount of time for which plaintiffs seek compensation.

The one category of time that we will reduce is the 4.4 hours of time sought for Mr. Stephan. We see no reason for two partners to have billed time on the matter, and plaintiffs have not explained what value Mr. Stephan brought to the case that was not already provided by Mr. Zouras. Thus, we eliminate Mr. Stephan's time from the lodestar analysis, and we therefore will award fees to plaintiffs for 227.4 hours (rather than 231.8 hours) of time.

While we will not reduce any further the amount of attorneys' time that plaintiffs seek (which already reflects a reduction of some 12 percent from the total number of hours that the attorneys scheduled in the case), we do have serious concern about the allocation of the time billed between partners and associates. In this case, after excluding Mr. Stephan's time, the partners who worked on plaintiffs' case scheduled 60.3 percent (137.1 out of 227.4) of the hours devoted to the matter through the filing of the fee petition. Based on our review of the case and the tasks completed, much more of the work performed could have been done by associates at a lower billing rate. For example, 21.9 hours out of 23.9 hours of attorney time spent on responding to the motion to decertify was billed by partners. We see no reason why capable associates could not have done far more of the research and drafting necessary to prepare that response. Indeed, we note that for the reply memorandum prepared in support of the fee petition, the ratio of partner and associate time billed was almost reversed. Associates spent 27.2 hours on the reply, and partners spent 2.6 hours.

Another example is the amount of time spent in responding to defendants' discovery requests. All the attorney time on that task (9.5 hours) was spent by partners. We see no reason

why a substantial portion of time spent in responding to discovery requests, which typically is delegated to associates, could not have been performed by the associates here.

In situations where a court concludes that the staffing of the case was unreasonable in that it led to an excess of partner time being devoted to the matter, that court has the authority to make an appropriate adjustment. *See Blumenthal v. G-K-G, Inc.*, No. 89 C 8693, 1994 WL 444807, at *2 (N.D. Ill. Aug. 15, 1994) (Williams, D.J.) (reallocating 25 percent of the partner hours billed on a fee petition to an associate rate); *see also In re Cont. Ill. Sec. Litig.*, 572 F. Supp. 931, 933 (N.D. Ill. 1983) (in setting a standard for the approval of attorneys' fees and expenses, the court stated that senior partner rates would be paid only for work that warrants the attention of a senior partner). Based on our review, we conclude that a reallocation of the attorney time is in order here.

As we have stated, about sixty percent of the attorney time for which plaintiffs seek compensation was scheduled by a partner at his higher billing rate. In our judgment, that ratio of partner to associate billing should, at a minimum, be reversed. We therefore will award attorneys' fees for the hours sought by plaintiffs, but with only forty percent of that time being awarded at the partner rate. Sixty percent of the hours will be compensated at the associate rates that we have found for Mr. Ficzko ($250.00 per hour) and Mr. Goldstein ($225.00 per hour), and forty percent will be paid at the partner rate ($425.00 per hour). That adjustment results in the following calculation:

- 90.96 hours (40 percent of the 227.4 hours) will be awarded at $425.00 per hour, for a total of $38,658.00.

- 93.23 hours will be awarded at Mr. Ficzko's rate of $250.00 per hour, for a total of $23,307.50.

- 43.21 hours of time will be awarded at Mr. Goldstein's rate of $225.00 per hour, for a total of $9,722.25.[6]

That comes to a total lodestar calculation of $71,687.75 for the work performed through the filing of the fee petition.

### C.

We now turn to the question of whether there should be any reduction in this lodestar calculation (which, for the reasons we have discussed above, already is reduced substantially from what plaintiffs seek). Defendants ask that the lodestar be reduced by at least 40 percent, because the settlement amount was far less than plaintiffs originally demanded and it did not include any award of liquidated damages.

We recognize, of course, that the lodestar figure is the "starting point" in the fee determination, and may be adjusted based on a variety of considerations. *Estate of Enoch ex rel. Enoch v. Tienor*, 570 F.3d 821, 823 (7th Cir. 2009). Relevant considerations include the "complexity of the legal issues involved, the degree of success obtained, and the public interest advanced by the litigation," *Schlacher v. Law Offices of Philip J. Rotche and Associates*, 574 F.3d 852, 856-57 (7th Cir. 2009), as well as any gap between the amount of judgment obtained and the recovery sought. *Connelly v. Nat'l Sch. Bus Serv., Inc.*, 177 F.3d 593, 597 (7th Cir. 1999). While there is no "proportionality" rule concerning the relationship between the amount of recovery and the amount of attorneys' fees awarded, proportionality concerns are a factor in determining what a reasonable attorneys' fee is, and there should be "increased reflection before awarding attorneys' fees that are large multiples of the damages recovered or multiples of the

---

[6] We calculate the time that we will reallocate to Messrs. Ficzko and Goldstein based on the ratio of the time that they billed when compared to one another. Collectively, they billed 90.3 hours, reflecting 61.7 hours by Mr. Ficzko (68.33 percent) and 28.6 hours by Mr. Goldstein (31.67 percent). We apply each of those percentages to the total amount of time that we will compensate at the associate rate based on reallocating the total of 227.4 hours so that 60 percent of it is attributable to associates. That results in 93.23 hours attributable to Mr. Ficzko (136.44 hours x .6833) and 43.21 hours attributable to Mr. Goldstein (136.44 hours x .3167).

damages claimed." *Moriarty*, 233 F.3d at 967-68. Defendants bear the burden of showing that a reduction in the lodestar calculation is appropriate. *Robinson v. City of Harvey*, 489 F.3d 864, 872 (7th Cir. 2007).

In the past, this Court has not been reluctant to reduce a lodestar using these considerations. In *Swanigan v. Trotter*, No. 07 C 4749, Report and Recommendation (N.D. Ill. March 12, 2012), we recommended (and the district judge adopted) a thirty-five percent reduction in the lodestar calculation where the fee sought was more than eight times the recovery, and the recovery itself was only thirteen percent of what plaintiff sought from the jury. In *Ragland v. Ortiz*, No. 08 C 6157, Report and Recommendation (N.D. Ill. Feb. 17, 2012), this Court recommended (and the district judge adopted) a reduction of fifteen percent in the lodestar, where the lodestar that the Court calculated (which included reductions from what plaintiff sought) was nearly four times the amount of the verdict in the case. However, the factors that led the Court to reduce the lodestar calculations in those cases are not present here.

*First*, we begin with the observation that this case involves a resolution through settlement and not after a trial. That is a factor that we deem significant to assessing the degree of success when compared to what plaintiffs sought. The admittedly very large gap between the plaintiffs' original settlement proposal and the settlement figure that was reached does not reflect a jury's rejection of plaintiffs' damages claim. Rather, it reflected a negotiated resolution which involved substantial give and take, and which took into consideration not only the merits and the risks involved in plaintiffs' liability claims, but also the financial ability of the defendants to pay even if a large judgment was achieved through trial. Thus, the fact that the settlement amount reflected substantial compromise by the plaintiffs and did not include any component

denominated as liquidated damages does not persuade the Court that a reduction in the lodestar is in order here.

*Second*, as we have already explained, the Seventh Circuit has indicated its view that suits brought under the FLSA are often less complex than lawsuits brought under statutes such as Title VII. We agree that, based on what we have seen, this case did not present substantial legal complexity. But even a case that lacks legal complexity may have factual complications and nuances that explain the amount of work that is performed. In this case, there were some 200 opt-in plaintiffs, depositions of more than a score of witnesses, and a significant amount of work that would be appropriate in managing that case. We have already adjusted for the fact that this type of litigation has a lower level of complexity in the rates that we award to the attorneys and the reallocation of the ratio of partner to associate time. No further reduction is necessary.

*Third*, this case does present a matter of exceptional public interest. We hasten to note that the public interest surely is served whenever a lawsuit results in workers who are entitled to a certain standard of pay under the FLSA having those rights vindicated. However, that is true in every FLSA case. And here, there is nothing about the result that speaks to a larger public interest. This is a confidential settlement that affects only one employer and the people who work or worked for it; the settlement does not have a broader ramification. However, all that this means is that the lodestar should not be adjusted upward because of extraordinary success; the fact that there is no broader public interest served does not warrant a reduction in the lodestar.

Finally, we consider the proportionality of the attorneys' fees sought to the result achieved. As we have mentioned, in other cases we have reduced the lodestar where, among other things, the attorneys' fees sought constituted, in our judgment, a "large multiple []" of the damages that were recovered. *Moriarty*, 233 F.3d at 968. However, this is not a case where the

attorneys' fees that we would award under the adjusted lodestar analysis constitute a large multiple of the relief obtained for the opt-in plaintiffs, and certainly nothing that approaches the multiple of 4 times or 8 times the recovery that gave the Court concern in *Ragland* and *Swanigan*.

Accordingly, for all of these reasons, we will not reduce the lodestar calculation.

## II.

That leaves us with two remaining issues: (1) an award of attorneys' fees for the time spent by plaintiffs on the reply memorandum; and (2) an award of costs. We address each of those in turn.

## A.

Plaintiffs seek payment for 29.8 hours of attorney time spent in preparing the reply memorandum in support of their fee petition, consisting of 27.2 hours claimed by Mr. Ficzko, and 2.6 hours claimed by Mr. Zouras. In our view, spending 29.8 hours – the equivalent of more than three and one-half full, eight-hour days – drafting a reply memorandum that did not plow new or difficult legal or factual material is too much. By way of comparison, we note that plaintiffs devoted a total of 23.9 hours to preparing their response to a motion to decertify. We are hard pressed to agree that plaintiffs reasonably should spend more time on a reply memorandum in support of their fee petition than they did on opposing a motion to decertify the opt-in classes. Therefore, we reduce the total amount of time we will award for work on the reply memorandum to 20 hours, consisting of 2.6 hours of partner time and 17.4 hours of associate time. At the respective rates of $425.00 an hour for Mr. Zouras and $250.00 an hour for Mr. Ficzko, that comes to a total award of fees for the reply memorandum of $5,455.00.[7]

---

[7] This number consists of $1,105.00 for Mr. Zouras's time (2.6 hours x $425.00 per hour), and $4,350.00 for Mr. Ficzko's time (17.4 hours x $250.00 per hour).

**B.**

Plaintiffs seek a total of $5,999.99 in costs. Defendants – who themselves incurred $6,834.89 in costs – challenge the vast majority of the costs that plaintiffs seek to recover.

*First*, defendants challenge costs in the amount of $3,968.91 that plaintiffs incurred by retaining a third-party vendor for purposes of setting up a database for case management and contact with the putative class members. Defendants claim that the invoice provided by plaintiffs (Defs.' Resp., Ex. 19) lacks sufficient detail to show that the costs are reasonable. However, defendants do not claim that the tasks that are reflected in the invoice are unnecessary, or that plaintiff did not actually pay the costs reflected in the invoice. Nor did defendants offer any evidence to show that these costs are not reasonable for the tasks that were performed. We reject that challenge.

*Second*, defendants challenge the costs for the court reporters attendance for the depositions of Mr. Chomiak and Ms. Halloway, on the ground that neither deposition was necessary because neither witness "provided relevant information" (Defs.' Resp. at 14). For the reasons that we earlier stated in concluding that the time devoted to these depositions is compensable, we also find that these costs are compensable. We therefore reject this challenge.

*Third*, defendants argue that the attendance fee for the depositions of Ibriham and Mike Kiswani should be reduced from $265.00 to $220.00 because each deposition lasted for only one-half day, and an attendance fee for a deposition of one-half day may not exceed $110.00 under Local Rule 54.1(b). Plaintiffs argue that defendants have provided no evidence that this was the rate in effect at the time the depositions were taken; however, plaintiffs have offered no evidence to the contrary. We therefore will grant this reduction of $45.00 in this item of cost.

*Fourth*, defendants seek a reduction of $152.60 in copying costs. Based on the submissions, we are unable to ascertain what particular copying costs plaintiffs seek that fall

within this category, and what plaintiffs assert show the reasonableness of those costs. Since it is plaintiff who bears the burden of establishing the reasonableness of the expenses, *Trustees of Chi. Plastering Inst. Pension Trust v. Cork Plastering*, 570 F.3d 890, 906 (7th Cir. 2009), we will sustain that objection and eliminate $152.60 in copying costs from the compensable expenses.

*Fifth*, defendants also challenge $133.91 in postage costs that plaintiffs seek (apparently in addition to the $318.56 in postage incurred by the third-party vendor) on the ground that this is an ordinary business expense and not recoverable (Defs.' Resp. at 15). The case which defendants cite, *American National Insurance v. City Bank, F.S.B.*, 623 F. Supp. 2d 953, 956 (N.D. Ill. 2009), stands for the proposition. Plaintiffs' reply memorandum simply reaffirms that plaintiffs expended those costs, without explaining why they are reasonable or reimbursable. We therefore will sustain that objection and eliminate from reimbursable expenses $133.91 in postage costs.

*Sixth*, defendants challenge plaintiffs request for $57.42 in Pacer charges and $40.00 for an FOIA request of the Department of Labor on the ground that there is no explanation for these charges or the need to incur them (Defs.' Resp. at 15). Again, plaintiffs' reply memorandum does not offer any justification for these expenses except that they were in fact incurred. We therefore will eliminate from reimbursable costs $97.42 for Pacer and FOIA expenses.

*Seventh*, defendants challenge requests for reimbursement of $10.74 for a luncheon (Defs.' Resp. at 15). Plaintiffs do not reply to this challenge, and we sustain it.

The reductions we have outlined above total $439.67. We therefore award costs in the amount of $5,560.32 ($5,999.99 minus $439.67).

## CONCLUSION

For the foregoing reasons, we award plaintiffs a total of $82,703.07, consisting of $77,142.75 in attorneys' fees and $5,560.32 in costs. This reflects a reduction from the $110,631.25 sought by plaintiffs in attorneys' fees (through the filing of the reply memorandum on the fee petition), and the $5,999.99 in costs that they sought.

ENTER

SIDNEY I. SCHENKIER
United States Magistrate Judge

Date: December 17, 2013